# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TAMMARA DIANNE VANHORN,**

    **Plaintiff,**

**v.**                                                  Case No: 6:19-cv-31-Orl-LRH

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## MEMORANDUM OF DECISION[1]

Tammara Dianne Vanhorn ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits and supplemental security income benefits. Doc. No. 1. Claimant raises five arguments challenging the Commissioner's final decision, and, based on those arguments, requests that the matter be reversed for an award of benefits, or alternatively, that the case be remanded for further administrative proceedings. Doc. No. 22, at 14, 21, 25, 27, 30, 44. The Commissioner asserts that the decision of the Administrative Law Judge ("the ALJ") is supported by substantial evidence, was decided by the proper legal standards, and should be affirmed. *Id.* at 44. For the reasons stated herein, the Commissioner's final decision is **AFFIRMED**.

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. *See* Doc. Nos. 15, 18–19.

**I. PROCEDURAL HISTORY.**

On April 2, 2015, Claimant filed applications for disability insurance benefits and supplemental security income benefits. R. 12, 184–99. Claimant alleged that she became disabled on July 1, 2013. R. 200. Claimant's applications were denied initially and on reconsideration, and she requested a hearing before an ALJ. R. 105, 108, 112, 117, 122–27. A hearing was held before the ALJ on January 5, 2018, at which Claimant was represented by an attorney. R. 29–58. Claimant and a vocational expert ("VE") testified at the hearing. *Id.*

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled. R. 12–23. Claimant sought review of the ALJ's decision by the Appeals Council. R. 182. On November 5, 2018, the Appeals Council denied the request for review. R. 1–6. Claimant now seeks review of the final decision of the Commissioner by this Court. Doc. No. 1.

**II. THE ALJ'S DECISION.[2]**

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 404.1520(a). R. 12–23.[3] The ALJ found that Claimant met the insured status requirements of the Social Security Act through December 31, 2018. R. 14. The ALJ concluded that Claimant had not engaged in substantial gainful activity from the alleged disability onset date: July 1, 2013. *Id.* The ALJ found that Claimant suffered from the following

---

[2] Upon a review of the record, I find that counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum. Doc. No. 22. Accordingly, I adopt those facts included in the body of the Joint Memorandum by reference without restating them in entirety herein.

[3] An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy. *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520).

severe impairments: cervical and lumbar disc disease; hypertension; hypothyroidism; obesity; anxiety disorder; depressive disorder; and history of substance abuse. *Id.* The ALJ concluded that Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 15–16. In particular, the ALJ found that Claimant's impairments did not meet or medically equal the criteria of listings 12.04 or 12.06. R. 15.

Upon consideration of the entire record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in the Social Security regulations[4]; with the following limitations:

> no more than occasional operation of foot and hand controls; no more than occasional reaching overhead; no more than frequent handling, fingering, and feeling; no climbing of ladders and scaffolds or crawling; no more than occasional climbing of ramps and stairs or kneeling; no more than frequent balancing, stooping, and crouching; no exposure to unprotected heights, moving mechanical parts, or extreme cold/heat; limited to simple tasks and simple work-related decisions with no more than occasional interaction with supervisors, co-workers, and the public; time off task can be accommodated by normal breaks; and requires a sit or stand option that allows for a change of position at least every 30 minutes, which is a brief positional change lasting no more than three minutes at a time where the claimant remains at the workstation during the positional change.

R. 16.

---

[4] The social security regulations define light work to include:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). In addition to the foregoing regulation, the Commissioner has stated that a "full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6.

After considering the record evidence, Claimant's RFC, and the testimony of the VE, the ALJ found that Claimant was unable to perform any past relevant work. R. 21. However, considering Claimant's age, education, work experience, and RFC, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Claimant could perform, including route clerk; marker II; and blade balancer. R. 22–23. Accordingly, the ALJ concluded that Claimant was not disabled, as defined in the Social Security Act, from the alleged disability onset date through the date of the decision. R. 23.

### III. STANDARD OF REVIEW.

Because Claimant has exhausted her administrative remedies in this matter, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

Cir. 1983).

**IV. ANALYSIS.**

In the Joint Memorandum, which I have reviewed, Claimant raises five assignments of error: (1) the ALJ erred in giving little weight to the opinions of Claimant's treating physician, James E. McDonnell, M.D.; (2) the ALJ erred in finding that Claimant's mental impairments did not meet Listing 12.04 for Depressive, Bipolar, and Related Disorders; (3) the ALJ's RFC determination failed to comply with Social Security Ruling 83-12; (4) the ALJ failed to properly evaluate Claimant's inability to afford recommended evaluations, treatments, and medications; and (5) Claimant's case was adjudicated by an unconstitutionally appointed ALJ. Doc. No. 22. Each of these issues will be addressed in turn.

    A.    <u>Dr. McDonnell</u>.

In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the medical opinions of treating, examining, and non-examining medical sources. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ considers a number of factors when weighing medical opinions, including: (1) whether the physician examined the claimant; (2) the length, nature, and extent of the physician's relationship with the claimant; (3) the medical evidence supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. *Id.* § 404.1527(c). "These factors apply to both examining and non-examining physicians." *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)).[5]

A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *See* 20 C.F.R. § 404.1527(c)(2) (giving controlling weight to the

---

[5] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

treating physician's opinion unless it is inconsistent with other substantial evidence). There is good cause to assign a treating physician's opinion less than substantial or considerable weight, where: (1) the treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion is conclusory or inconsistent with the physician's own medical records. *Winschel*, 631 F.3d at 1179 (citing *Phillips*, 357 F.3d at 1241).

"Generally, the opinions of examining physicians are given more weight than non-examining, treating more than non-treating, and specialists on issues within their areas of expertise more weight than non-specialists." *Davis v. Barnhart,* 186 F. App'x 965, 967 (11th Cir. 2006). The opinion of a non-examining physician is generally entitled to little weight and, "taken alone, do[es] not constitute substantial evidence." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985). The ALJ, however, may rely on a non-examining physician's opinion where it is consistent with the medical and opinion evidence. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (holding that the ALJ did not err in relying on a consulting physician's opinion where it was consistent with the medical evidence and findings of the examining physician).

Dr. McDonnell is a board-certified family medicine physician. Doc. No. 22, at 10. The record contains treatment notes from Dr. McDonnell from May 2015 through October 2015. R. 418, 421, 423, 440. The record also contains records from Dr. McDonnell from March 2017, August 2017, and November 2017. R. 462, 465, 470. These records reflect that Dr. McDonnell generally treated Claimant for pain due to degeneration of the lumbar and cervical spine as well as hypertension and hypothyroidism. In August 2016, Dr. McDonnell completed a Physical Assessment questionnaire as it relates to Claimant's physical impairments. R. 447–48 (Exhibit 6F). Dr. McDonnell opined, among other things, that Claimant's symptoms were frequently severe enough to interfere with the concentration and attention required to perform simple, work-related

tasks. R. 447. Dr. McDonnell also opined that Claimant could walk less than one city block, she could sit for three hours and stand/walk for one hour in an eight-hour workday, and she would need to take unscheduled breaks. *Id.* Dr. McDonnell further opined that Claimant could frequently lift and carry less than ten pounds; occasionally lift and carry ten pounds; and never carry twenty pounds or more. *Id.* Dr. McDonnell indicated that based on Claimant's impairments, she would be absent from work more than four times per month. R. 448.

After providing a detailed summary of Dr. McDonnell's Physical Assessment, the ALJ concluded as follows as it relates to Dr. McDonnell's opinions regarding Claimant's physical impairments:

> The Administrative Law Judge gives little weight to the opinion of Dr. McDonnell (Exhibit 6F) as his opined severity is not supported by his own treatment records, which have been essentially within normal limits except for elevated blood pressure and limited range of motion secondary to back pain (8/17). These records also document a significant gap in treatment, no treatment notes prior to May of 2015 and none after October of 2015 until March of 2017 (Exhibits 3F, 4F, 7F, and 8F). . . .

R. 19, 20.

Claimant argues that the ALJ failed to provide good cause for rejecting Dr. McDonnell's opinions. Doc. No. 22, at 14. In particular, she argues that Dr. McDonnell's treatment records support a contrary finding than that reached by the ALJ. *See id.* at 15–16. She also argues that the ALJ erred in giving significant weight to the opinions of state agency consultants, who did not consider Dr. McDonnell's medical opinions. *Id.* at 17–18.

Claimant's arguments are unpersuasive. An ALJ may properly reject a treating physician's opinion where the rejection is based on inconsistencies between the opinion and the doctor's own medical records. *See Gilabert v. Comm'r of Soc. Sec.*, 396 F. App'x 652, 655 (11th Cir. 2010) (recognizing that good cause reasons for rejecting a treating physician's opinion include that the opinion is inconsistent with the doctor's own medical records, the opinion is not bolstered by the

evidence, and that the evidence supports a contrary finding). The Court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

Here, the ALJ provided sufficient reasoning, supported by substantial evidence, to assign Dr. McDonnell's opinion little weight. Specifically, the treatment records cited by the ALJ, which encompass all of Dr. McDonnell's treatment records (Exhibits 3F, 4F, 7F, 8F), do not document the limitations set forth in the Physical Assessment questionnaire. Upon review, the treatment records support the ALJ's determination that they were "essentially within normal limits except for elevated blood pressure and limited range of motion secondary to back pain." *See* R. 418, 421, 423, 440, 462, 465, 470.[6] *See* Doc. No. 22, at 16. Accordingly, I find that the ALJ stated good cause for giving the opinions of Dr. McDonnell less than significant weight.[7]

"The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (citing 20 C.F.R. § 404.1526 (1980); *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981)). Accordingly, Claimant's first assignment of error is unavailing.

---

[6] Claimant also argues that Dr. McDonnell's opinions are supported by the findings in MRIs taken in February 2015. Doc. No. 22, at 16. Regardless, the ALJ specifically noted the MRI results in his discussion regarding Claimant's RFC. *See* R. 18 ("MRIs showed multiple level disc protrusions at C4-5, C5-6, and C6-7 levels with overall mild to moderate stenosis; and degenerative changes involving the L5-S1 level without any significant spinal stenosis.").

[7] Insofar as the ALJ cited to gaps in treatment to support his determination regarding Dr. McDonnell's opinion, which Claimant does not address in the joint memorandum (Doc. No. 22, at 14–18), I note that "frequency of examination" is a proper factor for the ALJ's consideration in weighing medical opinions. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

B.  Listing 12.04.

At step two of the sequential evaluation process, the ALJ found that Claimant has the severe impairments of anxiety disorder and depressive disorder. R. 14. However, at step three, the ALJ found the severity of Claimant's mental impairments did not meet or medically equal the criteria of Listing 12.04. Claimant challenges that finding. Doc. No. 22, at 21–24.

At step three of the sequential evaluation process, the ALJ must consider whether a claimant's impairments, individually or in combination, meet or equal any of the impairments contained in the Listing of Impairments. The Listings identify impairments that are considered severe enough to prevent a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1525(a). By meeting a listed impairment or otherwise establishing its equivalence, a claimant is presumptively determined to be disabled regardless of age, education, or work experience. *Id.*

"To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 741 (11th Cir. 2008) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002)). "The claimant has the burden of proving an impairment meets or equals a listed impairment." *Id.* (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)).

"Listing 12.04 provides that a claimant is disabled if she has a sufficiently severe 'disturbance of mood, accompanied by a full or partial manic or depressive syndrome.'" *Id.* (citing 20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.04). As relevant here,

> To meet Listing 12.04 for affective disorders, a claimant must meet the requirements in both paragraphs A and B, or meet the requirements in paragraph C. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.04. Paragraph A requires "[m]edically documented persistence, either continuous or intermittent," of a qualifying depressive syndrome, manic syndrome, or bipolar syndrome. *See id.* at 12.04(A)(1)-(3). Paragraph B requires that the medically documented persistent syndrome result in at least two of

> the following: (1) marked restriction of activities of daily living; (2) marked
> difficulties in maintaining social functioning; (3) marked difficulties in maintaining
> concentration, persistence, or pace; or (4) repeated episodes of decompensation, each
> of extended duration. *Id.* at 12.04(B). "Marked" means "more than moderate but
> less than extreme," and occurs when the degree of limitation seriously interferes with
> a claimant's ability to function "independently, appropriately, effectively, and on a
> sustained basis." *Id.* at 12.00(C)(1)-(3); *see* 20 C.F.R. §§ 404.1520a(c)(4),
> 416.920a(c)(4) (describing a five-point scale used to rate the degree of limitation:
> none, mild, moderate, marked, and extreme). Episodes of decompensation are
> "exacerbations or temporary increases in symptoms or signs accompanied by a loss
> of adaptive functioning, as manifested by difficulties in performing activities of daily
> living, maintaining social relationships, or maintaining concentration, persistence, or
> pace." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(C)(4). To have a "repeated"
> episode of "extended duration," a claimant must have three episodes within one year,
> or an average of once every four months, each lasting at least two weeks. *Id.*

*Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762–63 (11th Cir. 2014).

In the decision, in addressing the "paragraph B" criteria,[8] the ALJ found that Claimant had moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentration, persistence, or pace; and moderate limitations in adapting or managing oneself. R. 15–16.[9]

Claimant argues that the ALJ erred in finding that her impairments do not meet or medically equal the criteria of listing 12.04 and that this finding is not supported by substantial evidence. Doc. No. 22, at 21–24. Specifically, Claimant argues that the ALJ erred in finding that she did not satisfy the "paragraph B" criteria because Dr. McDonnell indicated on a Mental Impairment

---

[8] While Claimant spends a significant portion of the joint memorandum arguing that she satisfies the "paragraph A" criteria of Listing 12.04 (Doc. No. 22, at 21–22), the ALJ's analysis only focused on whether Claimant satisfied the "paragraph B" criteria. *See* R. 15–16. The Commissioner likewise only addresses the "paragraph B" criteria. Doc. No. 22, at 24–25. Even assuming that the ALJ erred in failing to consider the "paragraph A" criteria for Listing 12.04, any error was harmless because Claimant had to demonstrate that she met the criteria for both paragraphs A and B, and as discussed herein, substantial evidence supports the ALJ's finding that Claimant did not satisfy the paragraph B criteria. *See Himes*, 585 F. App'x at 763.

[9] The ALJ did not address whether Claimant had episodes of decompensation for extended duration, and Claimant does not address that factor before this Court. Therefore, it appears that there is no dispute that Claimant did not have episodes of decompensation for an extended duration.

Questionnaire that Claimant had marked limitations in three areas: (1) ability to understand, remember, or apply information; (2) concentration, persistence, and pace; and (3) adapting or managing oneself. Doc. No. 22, at 22 (citing R. 449–51, Exhibit 6F). In further support, she points to the medical records of psychiatrists Marchant Van Gerpen, M.D. and Dimy Fluyau, M.D., as well as her Global Assessment of Function ("GAF") score of 30 from February 26, 2015. *Id.*

Upon review, I find that the ALJ's articulated reasons, and the record evidence, provide substantial evidence supporting the ALJ's finding that Claimant does not meet two of the four "paragraph B" criteria in Listing 12.04. The burden of proof remained squarely on Claimant, "and the Commissioner's findings as to whether [she] carried that burden are conclusive and must be affirmed if supported by substantial evidence, even if those findings are not supported by a preponderance of the evidence in the record." *Carpenter v. Comm'r of Soc. Sec.*, 614 F. App'x 482, 487 (11th Cir. 2015) (citations omitted). Moreover, the ALJ was not required to "mechanically recite the evidence leading to [his] determination." *Keane v. Comm'r of Soc. Sec.*, 205 F. App'x 748, 750 (11th Cir. 2006) (citing *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)).

As an initial matter, the ALJ cited to and discussed the treatment records from Halifax Health, which included the records from Drs. Van Gerpen and Fluyau, in reaching his determination regarding Listing 12.04. *See* R. 15–16.[10] Claimant generally discusses the records from Drs. Van

---

[10] Specifically, the ALJ noted as follows:

> The evidence of record shows the claimant was hospitalized on Baker ACT in February of 2015 due to overdose with Xanax and alcohol. Initially, she was sleepy, but awakened easily. Mental status exam revealed her affect was dysphoric/tearful. Eye contact was poor. There was moderate psychomotor retardation, but no psychomotor agitation. Her mood was depressed. Thought process was linear, logical, and goal directed with no looseness of association or flight of ideas. She denied auditory/visual hallucinations and delusions. She was discharged ten days later with a diagnosis of benzodiazepine overdose, depression, and alcohol abuse. At time of discharge, mental status exam was within normal limits (Exhibit 2F/2-92).

R. 15. Because the ALJ specifically addressed these records, I find that the ALJ's statement that "there is

Gerpen and Fluyau in asserting that her mental impairments qualify under paragraph A of the listing, but does not point to anything in those records that the ALJ failed to consider that would have led to a different determination as to the ALJ's findings pertaining to each of the four areas of functioning under paragraph B. Accordingly, Claimant has failed to establish reversible error. *See Overton v. Comm'r of Soc. Sec.*, No. 6:18-cv-690-Orl-40DCI, 2019 WL 4395310, at *3 (M.D. Fla. May 13, 2019), *report and recommendation adopted*, 2019 WL 3297249 (M.D. Fla. July 23, 2019) (finding that where the claimant argued that "certain findings were 'noted' in the records and were ignored," but did not "explain how consideration of these notes" supported a finding of an extreme or marked limitation in any of the four functional areas, the claimant waived the argument (citing *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 n.2 (11th Cir. 2016))).

Moreover, the ALJ specifically noted Claimant's testimony that she "got along with others and that her memory was good" and that "she could understand directions and had no problems with concentration." R. 15. Claimant does not challenge those findings before this Court, and those findings support the ALJ's determination that Claimant did not have marked limitations in these functional areas.

Claimant also points to her GAF score from February 26, 2015. However, "GAF scores bear no direct correlation to the severity requirements of the mental disorder listings." *Overton*, 2019 WL 4395310, at *4 (citing *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 613 (11th Cir. 2015); *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 527 (11th Cir. 2015)), *report and recommendation adopted*, 2019 WL 3297249 (M.D. Fla. July 23, 2019). Instead, the Commissioner has "declined to endorse the GAF scale for use in the Social Security and SSI disability programs, and has indicated that GAF scores have no direct correlation to the severity

---

no evidence of any treatment from a mental health professional" was, at most, harmless.

- 12 -

requirements of the mental disorder listing." *Id.* (quoting *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (per curiam)). And here, the ALJ specifically cited to, discussed, and discounted Claimant's GAF score as "reflective of temporary social stressors and not the claimant's overall functioning throughout the relevant period at issue." *See* R. 20–21.

As to Claimant's contention that the ALJ should have found that Claimant's impairments satisfied paragraph B of listing 12.04 based solely on Dr. McDonnell's opinions in the Mental Impairment Questionnaire, I find that argument unpersuasive. The ALJ specifically noted that Dr. McDonnell did not refer Claimant for psychiatric/psychological treatment and that Claimant had responded well to Paxil. R. 16; *see* R. 443–44. The ALJ also noted in the decision that "Dr. McDonnell is not of the appropriate medical specialty to assess the claimant's mental impairments . . . ." R. 20. *Cf.* 20 C.F.R. § 404.1527(d)(5) (stating that the Commissioner "generally give[s] more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). I note that Claimant points to no other medical opinions of record stating that she has marked limitations in any of the four functional areas.

Finally, the parties dispute whether the opinions of the state agency consultants supported the ALJ's determination. Doc. No. 22, at 23–25. However, as the Commissioner argues, the opinions of the state agency consultants support the ALJ's determination regarding Listing 12.04, although the ALJ actually found that Claimant's functional limitations were more severe than those proposed by the state agency consultants. *See* R. 62 (Maurice Rudmann, Ph.D. opining that no mental medically determinable impairments were established); R. 77 (Wan Ahmad, Ph.D. opining that Claimant had only mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration).

Where the Commissioner's decision is supported by substantial evidence, this Court will affirm, even if it finds that the evidence preponderates against the Commissioner's decision. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). Accordingly, having found that substantial evidence supports the ALJ's findings regarding Listing 12.04, Claimant has failed to establish reversible error.

    C.    <u>Social Security Ruling 83-12</u>.

Claimant next argues that the ALJ's RFC determination is inconsistent with SSR 83-12 because the ALJ found that Claimant was limited to light work, but also found that she requires a sit/stand option, where she needs a three-minute "positional change" every thirty minutes. Doc. No. 22, at 25. Therefore, she argues that "remand is required for determination of whether [Claimant's] limited skill base and inability to remain uninterrupted at a work station precludes all employment." *Id.* at 26.

> Social Security Regulation 83–12, provides, in pertinent part:
>
> There are some jobs in the national economy—typically professional and managerial ones—in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base.

SSR 83-12, 1983 WL 31253 (Jan. 1, 1983).

As the Commissioner argues, the ALJ posed a hypothetical question to the VE regarding the need for a "sit or stand option which allows for a change of position at least every 30 minutes. It would be a brief positional change lasting no more than three minutes at a time and the individual remaining at the work station during the position change." R. 56. The VE responded that with

this limitation imposed, in addition to the other limitations accounted for in Claimant's RFC, Claimant could perform the positions of route clerk; marker; and blade balancer. R. 55–56.

Accordingly, because the VE testified that the jobs identified were compatible with the sit/stand option, "the ALJ's hypothetical to the VE was proper and the VE testimony constituted substantial evidence to support the Commissioner's decision." *Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 F. App'x 693, 699 n.5 (11th Cir. 2006). *See, e.g.*, *Bush v. Colvin*, No. 3:13-cv-691-J-JRK, 2014 WL 1456951, at *4, n.4 (M.D. Fla. Apr. 14, 2014) ("'SSR 83-12 does not endeavor to decide there can *never* exist significant light jobs with a sit/stand option'; rather, it directs an ALJ to obtain VE testimony in such cases. Here, the ALJ did just that." (quoting *Books v. Chater*, 91 F.3d 972, 980–81 (7th Cir. 1996))); *Shields v. Colvin*, No. 7:12-cv-927-AKK, 2014 WL 2434346, at *7 (N.D. Ala. May 29, 2014) (internal quotation marks omitted) (concluding that the ALJ properly determined the claimant's RFC in accordance with SSR 83-12 when the VE "relied on her experience as a vocational rehabilitation counselor to determine that a sit/stand option would not preclude [the claimant] from working"); *Faust v. Astrue*, No. 3:07-cv-136 (CDL), 2008 WL 5000101, at *4 (M.D. Ga. Nov. 20 2008) ("Having had a VE testify as to what, if any, jobs Claimant was capable of performing, due to his need to alternate between sitting and standing, the ALJ properly followed the guidelines as set out in SSR 83-12. Thus, no error is found as to this claim."). Accordingly, I find no error.

    D.    <u>Inability to Afford Medications and Treatment</u>.

Claimant next contends that the ALJ erred as a matter of law in denying her disability benefits on the ground that she failed to obtain free medical treatment. Doc. No. 22, at 27–29. The Commissioner responds that Claimant cannot demonstrate reversible error because "noncompliance was clearly not the only factor or the principal factor leading to the ALJ's decision." *Id.* at 30.

Throughout the decision, the ALJ states:

- "[T]here is no evidence of any treatment from a mental health professional. The claimant notes this is related to no insurance and lack of finances. However, there are agencies available to help individuals receive treatment, which the claimant has not sought out." R. 15.

- "Dr. McDonnell . . . felt the claimant suffered from a mental impairment that significantly interfered with daily function. However, no referral had been made for formal psychiatric/psychological treatment. He stated the claimant was unable to afford mental health evaluation, but that she had responded well to Paxil." R. 16, 18, 20–21.

- "[T]he claimant has been prescribed Paxil by her primary care physician, Dr. McDonnell; however, there is no evidence of any treatment from a mental health professional. The claimant notes this is related to no insurance and lack of finances. However, there are agencies available to help individuals receive treatment, which the claimant has not sought out." R. 15; *see also* R. 20.

As a general rule, "the ALJ may not draw an adverse inference from a claimant's lack of medical treatment without first considering the claimant's explanation for his failure to seek treatment." *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011) (citing S.S.R. 96-7). Poverty can excuse a claimant's non-compliance with medical treatment. *Id.* (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)). Accordingly, the ALJ must consider whether the claimant can afford medical treatment before denying an application for disability benefits based on a failure to comply with prescribed medical treatment. *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)). However, if the failure to follow medical

treatment is not a principal factor in the ALJ's decision, "then the ALJ's failure to consider the claimant's ability to pay will not constitute reversible error." *Id.* (citing *Ellison*, 355 F.3d at 1275).

Here, the ALJ noted that Claimant did not seek mental health treatment. The ALJ also acknowledged, however, that the reason Claimant did not seek mental health treatment was, at least in part, due to her inability to pay for such treatment. But the ALJ did not rely solely on Claimant's failure to seek mental health treatment in rejecting her claim of disability. *See* R. 21 (determining Claimant's subjective complaints of pain were not entirely credible because Claimant, among other things, "has not generally received the type of medical treatment one would expect for a totally disabled individual"; there were significant gaps in treatment; Claimant's treatment was essentially routine and/or conservative in nature; there was no treatment by specialists; the objective medical findings did not document an inability for Claimant to perform work activity within the established RFC; Claimant was taking no narcotic based medications despite allegations of limiting pain; Claimant's description of symptoms and limitations were inconsistent; and Claimant's demeanor at the hearing portrayed no evidence of pain or discomfort while testifying).

Under these circumstances, I find no reversible error. *See, e.g.*, *Ellison*, 355 F.3d at 1275 (finding that the ALJ's failure to consider a claimant's ability to afford recommended medical treatment did not constitute reversible error where the ALJ discredited the claimant's allegations of disability based primarily on factors other than noncompliance with that treatment); *Brown*, 425 F. App'x at 817 ("Because the gap in medical treatment did not play a major role in the ALJ's decision, any error in considering that gap in treatment was harmless." (citing *Ellison*, 355 F.3d at 1275)).

E. <u>Appointment of ALJ</u>.

As an alternative to all of her previous arguments, Claimant asks this Court to remand the case to be heard before a different ALJ because, according to Claimant, the ALJ who heard

Claimant's application was unconstitutionally appointed. Doc. No. 22, at 30. In reliance on *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2051 (2018), Claimant states that "[w]here only staff members of an Agency give an ALJ his/her position, the ALJ then has unconstitutionally assumed their position, and a valid challenge under the Appointments Clause exists." *Id.* The Commissioner, on the other hand, contends that Claimant's Appointments Clause argument is untimely because she failed to raise it during the administrative proceedings. *Id.* at 34.

In *Lucia*, the Court held that ALJs for the Security and Exchange Commission ("SEC") are "Officers of the United States" subject to the Appointments Clause. *See* U.S. Const. Art. II § 2, cl. 2. Because the ALJs were not appointed by an entity identified in Article II, § 2, cl. 2 of the United States Constitution, a decision by such unconstitutionally appointed ALJ was "tainted with an appointments violation" and a new hearing before a different ALJ was required. *Lucia*, 138 S. Ct. at 2055. In making this determination, the Supreme Court found that "one who makes a *timely* challenge to the constitutional validity of the appointment of an officer who adjudicates his case" is entitled to relief. *Id.* (emphasis added) (citing *Ryder v. United States*, 515 U.S. 177, 182–183 (1995)). In that case, the Court found Lucia's challenge timely because he contested the appointment of the ALJ before the Commissioner, and continued to seek relief in the courts. *Id.*

Since *Lucia*, it appears that the majority of courts to consider challenges to the constitutionality of the appointment of an ALJ for the Social Security Administration, including the courts in this district, have concluded that such challenges are untimely if the claimant failed to raise the issue before the Commissioner. *See, e.g.*, *Burr v. Comm'r of Soc. Sec.*, No. 5:18-cv-518-Oc-18PRL, 2019 WL 3821572, at *2 (M.D. Fla. May 17, 2019), *report and recommendation adopted*, 2019 WL 3817486 (M.D. Fla. Aug. 14, 2019); *Wagner v. Berryhill*, No. 2:18-cv-285-FtM-UAM, 2019 WL 2724017, at *7 (M.D. Fla. July 1, 2019); *Lopez v. Berryhill*, No. 18-20626-CV, 2019 WL

1429632, at *6 (S.D. Fla. Mar. 29, 2019); *Valle-Roman v. Comm'r of Soc. Sec.*, No. 6:18-cv-1158-Orl-TBS, 2019 WL 1281171, at *2 (M.D. Fla. Mar. 20, 2019); *see also Abbington v. Berryhill*, No. 1:17-00552-N, 2018 WL 6571208, at *2 n.7 (S.D. Ala. Dec. 13, 2018) (listing several out-of-district cases in which courts have held that Appointment Clause challenges to Social Security ALJs are forfeited when the claimant fails to raise the issue at the administrative level); *Page v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 902, 905 (E.D. Mich. 2018) ("As of this date, the courts that have considered the [Appointments Clause] issue have unanimously rejected attacks on the validity of the ALJ's appointment under *Lucia* brought under 42 U.S.C. § 405(g) where the claimant failed to make a constitutional challenge at the administrative level."). Claimant only cites to a few out-of-district cases that have decided the issue the other way. *See Bizarre v. Berryhill*, 364 F. Supp. 3d 418, 420–21 (M.D. Pa. 2019); *Bradshaw v. Berryhill*, 372 F Supp 349, 358 (E.D.N.C. 2019); *Culclasure v. Comm'r of Soc. Sec. Admin.*, 375 F. Supp. 3d 559, 571–72 (E.D. Pa. 2019).[11]

In this case, I find that Claimant has failed to establish that remand is appropriate for two central reasons. First, Claimant's "argument is vague and conclusory, providing no specifics as to how the ALJ came into [his] position[, and] the Court finds no reason to assume, without being shown, that the ALJ was not appointed in compliance with the Appointments Clause." *See Wagner*, 2019 WL 2724017, at *7. Second, even assuming that the ALJ was not appointed in compliance with the Appointments Clause, I agree with the Commissioner that Claimant's challenge to the appointment of the ALJ in this case is untimely. Because Claimant has not shown that she raised

---

[11] The Eleventh Circuit has not yet weighed in on the timeliness issue, although it appears that at least two appeals pending before the Court raise the issue. *See Jones v. Berryhill*, No. 4:18CV503-CAS, 2019 WL 2583157, at *7 (N.D. Fla. June 21, 2019) (citing *Perez v. Berryhill*, No. 18-20760-CV-TORRES, 2019 WL 1405642 (S.D. Fla. May 28, 2019), *appeal filed sub nom Perez v. Comm'r of Soc. Sec.*, No. 19-11660 (Apr. 29, 2019); *Lopez v. Berryhill*, No. 18-20625-CV-TORRES, 2019 WL 1429632 (S.D. Fla. Mar. 29, 2019), *appeal filed sub nom Lopez v. Acting Comm'r of the Soc. Sec. Admin.*, No. 19-11747 (11th Cir. May 3, 2019)).

the Appointments Clause issue in the administrative proceedings before the Social Security Administration, I find that Claimant has forfeited this claim. *See Burr*, 2019 WL 3821572, at *2, *report and recommendation adopted*, 2019 WL 3817486; *Wagner*, 2019 WL 2724017, at *7; *Lopez*, 2019 WL 1429632, at *6; *Valle-Roman*, 2019 WL 1281171, at *2; *Abbington*, 2018 WL 6571208, at *2.

**V. CONCLUSION.**

For the reasons stated herein, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**.
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner and **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on March 2, 2020.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record